## SUPREME COURT.

### RUSHER AND WIFE agt. MORRIS AND WIFE.

Where a suit is brought by a *married woman*, concerning her separate property, her husband must be joined with her, unless she elects to sue alone.

Whether a married woman is under an improper control or restraint of her husband in reference to suits affecting her separate property, may be inquired into. And this may be done, in analogy to the law regulating the proof of the execution of conveyances, by her examination separate and apart from her husband. And the examination may be at her own instance, or at the instance of the defendants, or on the mere motion of the court itself.

If, upon inquiry, it should appear that the suit was instituted against her wishes, a discontinuance could be compelled.

But if she chooses to associate her husband with her in the prosecution of such actions, she does but exercise a right which, if not possessed before, the law of 1848 and the Code have given her.

*New-York Special Term, April,* 1854. Married woman's rights, &c.

This was an action brought by the plaintiffs on the 23d day of January, 1854, to foreclose a mortgage made the 29th day of June, 1853, for the sum of three thousand one hundred dollars, executed to Mary Ann C. Rusher, wife of John B. Rusher, one of the plaintiffs. The defendants demurred to the complaint in the following words:

" The defendants, Peter Morris and wife, demur to the complaint of the plaintiffs in this action, for that there is a defect of parties plaintiff therein."

D. T. EASTON, *for Plaintiffs.*
W. McDERMOTT, *for Defendants.*

ROOSEVELT, Justice. The defendants insist, by demurrer, that although Mrs. Rusher has a right, Mr. Rusher has none, to sue on a bond and mortgage given to her alone, since the act of 1848. That husbands have no longer any interest in the " actions " of their wives, and that, for the future, in respect of their own property, are to be treated precisely as if, in the language of the day, they were " single females."

A married woman's property, including of course her bonds

Rusher and wife agt. Morris and wife.

and mortgages, is now, it is true, "sole and separate estate," and not "subject (any longer) to the disposal of her husband, nor liable for his debts."

The new law, dispensing with the usual special conveyancing in each particular case, has made a general marriage settlement for all. But has it gone so far as, in effect, in matters of property, to establish an entire separation between man and wife? Has it made it unlawful to join him with her when she is seeking to recover her property; and must she, in all such cases, whether she desire it or not, choose some third person to be her "next friend," in his stead?

The new Code of Proceedure, and the new married woman's rights' act, were both in course of preparation at the same time and in the same legislature; but by different and independent hands, not acting in concert. And therefore, although necessary, as it certainly is, it may be difficult to harmonize their provisions.

For the mere fact that the date of the final passage of the Code, April 12th, 1848, is five days later than that of the other statute, can furnish no ground, under the circumstances, for inferring an intention to repeal any of the provisions of the latter.

Now the Code, treating of civil actions, lays down this broad general rule, that "when a married woman is a party, her husband *must* be joined with her;" thus recognizing at once both his duties and his rights. Certain exceptions, however, of obvious necessity or propriety, are annexed to the rule; namely, divorce and actions "concerning her separate property."

In the former, from the nature of things, she *must;* in the latter, she "*may,* sue alone."

In the former, as husband, he being against her, "can not be joined with her." "She must sue by her next friend." In the latter, he not only may, but "must be joined," unless she elects, as she may, "to sue alone." (*Code,* § 114.)

There is nothing illegal, therefore, in the husband's becoming a coplaintiff in this suit. But as the wife had an undoubted right, which at times may be of great importance to the better protection of her interests, to sue without him, it is the duty

of the court to guard her in its exercise; and the question is, how is that to be done? How is she to be guarded against the possible consequences of suits brought, perhaps without her knowledge or consent, in the joint names of both, but really under the separate control of the husband alone?.

When a wife joins with her husband in a conveyance of real estate, the law provides, as the proof of exemption from undue marital control, that she shall make an acknowledgment before the proper officer that she does the act freely; and his certificate to that effect is made legal evidence of the validity of the deed.

I see no difficulty, in the observance of positive rule, in introducing a similar practice in these cases.

Indeed, it is but following a well-established course, never abolished, by the late court of chancery. And the principle is also, in effect, recognized ·by the amendment made in 1849 to the married woman's act, which places even trust property under the direct control of the wife, and annuls the trustees, in all cases of " a certificate (duly obtained) of a justice of a supreme court, that he has examined and made inquiry " into the situation, capacity, &c., of the married woman, and is satisfied with the result.

The sole ground on which the defendants place their demurrer is the alleged " *defect* of parties," whereas, according to the argument presented at the hearing, the real objection to the complaint is a supposed *excess* of parties; one of them, the husband, having, as is contended, no interest in the cause of action. The oral argument, it will thus be seen, overrules the written demurrer. But there is in fact neither excess nor defect. Husbands, notwithstanding the act of 1848, have an interest, as against strangers, in enforcing the rights of their wives. Although deprived of the power of " disposal," they are not exonerated or deprived of the duty and the right, at their wives' instance, of protecting their wives' property.

The complaint, in the present case, prays, it is true, that the mortgage money, when received, may be paid to both. But the court is authorized to adapt its relief, not to that merely

Rusher and wife agt. Morris and wife.

which is asked for, but to that which is just; and, should the wife not make the required acknowledgment of her wishes on the subject, the court can decree the payment to be to her separately, or to her sole and separate use.

At all events, I am not disposed to adopt either as a consequence of the Code or of the act for the better protection of their rights, the harsh proposition that married women must be turned out of court merely because they come in arm in arm with their husbands!

Whether the married woman is under restraint or not may be inquired into. She may be examined as to her wishes, separate and apart from her husband. She may be so examined at her own instance, or at the instance of the defendants, or on the mere motion of the court itself. And if, upon inquiry, it should appear that the suit was instituted against her wishes, a discontinuance could be compelled. But if she chooses, as in most instances she well may, to associate her husband with her in the prosecution of her rights, she does but exercise a right which, if not possessed before, the law of 1848 and the Code itself have given her.

The demurrer, therefore, must be overruled, and judgment of foreclosure and sale entered, with costs and an allowance of three per cent.; and with directions to pay the mortgage money, when raised, direct to the wife, unless she shall give a written consent, duly acknowledged before, and certified by, one of the justices of this court, to pay the same to her husband or some other person in her behalf.